[This opinion has been published in *Ohio Official Reports* at 77 Ohio St.3d 30.]

THE STATE EX REL. MEAD DIGITAL SYSTEMS, APPELLANT, *v.* JONES ET AL., APPELLEES.

[Cite as State ex rel. Mead Digital Sys. v. Jones, 1996-Ohio-177.]

*Workers' compensation—Aggravation of pre-existing multiple sclerosis—Award of permanent total disability compensation by Industrial Commission not an abuse of discretion, when.*

(No. 94-2036—Submitted July 24, 1996—Decided October 30, 1996.)

APPEAL from the Court of Appeals for Franklin County, No. 93AP-768.

_____

{¶ 1} On January 22, 1982, appellee-claimant, Daniel R. Jones, fell and struck his head in the course of and arising from his employment with appellant Mead Digital Systems, a self-insured employer. Mead certified the claim as valid and recognized it for head trauma and hyperextension neck injury. Claimant apparently missed work intermittently until June 28, 1982, at which time he became unable to return to his former position of employment and remained off until December 31, 1983.

{¶ 2} During claimant's absence, he began to experience assorted neurological problems. Extensive medical testing concluded that claimant had unknowingly been living with a dormant multiple sclerosis ("MS") that had, unfortunately, been activated by the head injury. Claimant's efforts to have the neurological conditions included in his claim resulted in formal allowance of "neurogenic bladder" and "aggravation of pre-existing multiple sclerosis" by a district hearing officer of appellee Industrial Commission of Ohio. Mead did not appeal.

{¶ 3} Between December 31, 1983 and January 11, 1985, claimant, during periods of symptom remission, attempted to return to work. On January 11, 1985,

his condition again flared up, and claimant never returned. This prompted claimant to file with Mead a C-85-A "Application to Re-activate Claim." In it, claimant sought temporary total disability compensation from January 11, 1985 forward, based on the certification of attending physician Rabindra Kitchener, who attributed the disability to claimant's MS. Mead accepted the C-85-A as valid and paid compensation and benefits pursuant thereto.

{¶ 4} In 1989, claimant moved for permanent total disability compensation. Dr. Clarence J. Louis reported:

"Other than a cervical strain, the residual neurologic deficit of this claimant is due to multiple sclerosis. Indeed, trauma can trigger an attack of multiple sclerosis but the basic pathology was not created by the fall itself. The triggering phenomena once started no longer contribut[e] to the preservation of the multiple sclerosis, demyelinating phenomena. Persistent weakness in the lower extremity with neurogenic bladder is due to the persistence of the injury from the multiple sclerosis itself and not from sustained effect of the triggering phenomena of hypertension of the neck.

"* * *

'PERMANENT TOTAL IMPAIRMENT RATING: The industrial injury does not prohibit the claimant from engaging in sustained remunerative employment. However, said employment must be devoid of flexing, extending and rotating the head and neck down to 50% range of motion. The claimant has reached maximum medical recovery.

"Rehabilitation potential assessment: Considering the degree of impairment, the claimant is medically and psychologically stable to engage in rehabilitation program. Said services should be at a sedentary level of activity. Vocational rehabilitation and occupational therapy is recommended to prepare the claimant to return to gainful employment. If the recommended programs are

2

implemented, the claimant should seek employment of a light duty nature that does not require walking."

{¶ 5} In follow-up interrogatories prepared and submitted by claimant's counsel, Dr. Louis stated:

"2. Isn't it true that you did not consider the condition of multiple sclerosis in reaching your opinion that the claimant was not prohibited from engaging in sustained remunerative employment?

"Answer[Louis]: Yes.

"3. Without taking into account the condition of aggravation of preexisting multiple sclerosis, isn't it true that you did identify restrictions of flexing, extending and rotating the head and neck down to 50% range of motion?

"Answer: Yes.

"4. I am attaching a report from Rabindra Kitchener, M.D. dated May 12, 1989. Were you aware that the treating physician was of the opinion that Mr. Jones is not capable of any type of occupation and is not capable of sustained employment."

"Answer: No.

"5. I am attaching a report from Jerry E. Flexman, PhD. dated December 13, 1989. Considering the totality of the condition of multiple sclerosis in addition to the condition of trauma to the head, hyperextension to the neck, and neurogenic bladder, would you have any reason to disagree with Dr. Flexman's conclusion that the claimant is not a good candidate for rehabilitation and is permanently and totally removed from all sustained gainful work activity?

"Answer: No."

{¶ 6} Dr. Patricia E. Wongsam concluded:

"In my opinion, this man has really no rehabilitation potential. His multiple sclerosis is severe enough to affect not only his vision, but his speech, and would also affect his concentration. He would fatigue quite readily and would not be able

to tolerate a full days [sic] work. His poor coordination and his spasticity would affect his ability to ambulate and his poor coordination of his upper extremities would affect his ability to write and do any fine repetitive movement. He would have difficulty using a keyboard as on a computer because of his poor coordination. His visual in coordination [sic] would affect his ability to concentrate on a CRT screen for any length of time and to read. He is therefore really disabled for any kind of work. Even if he could perform some activity, he would not be able to do this in a full workday. Rehabilitation potential is nil. He has a serious disease and will need continued medical follow-up with a neurologist."

{¶ 7} The commission awarded permanent total disability compensation writing:

"The reports of Doctors Kitchener, Flexman, Louis, Dimirjian [sic, Demirjian] and Wongsam were reviewed and evaluated. This order is based particularly upon the reports of Doctor(s) Louis and Wongsam, a consideration of the claimant's age, education, work history * * *. This man cannot drive due to vision problems, and he cannot read. He has problems thinking, and suffers from urinary incontinence. His motor condition has confined him to a wheelchair, although he can occasionally use a wheelchair [sic]. Aggravation of his multiple sclerosis has been recognized in this claim. Given his present multiple severe problems it is highly unlikely that work is a realistic possibility, and his condition is expected to deteriorate. That the Commission finds [permanent total disability compensation] not only on the review of the file, but on Dr. Lewis' [sic] evaluation and the evaluation by the Rehabilitation Division and Dr. Dimirhian's [sic] report is not acceptable because he is excepting the multiple sclerosis as being a part of this claim. [Sic]."

{¶ 8} Mead filed a complaint in mandamus in the Court of Appeals for Franklin County, asserting that the commission abused its discretion in granting

permanent total disability compensation. The court of appeals disagreed and denied the writ.

{¶ 9} This cause is now before this court upon an appeal as of right.

_____

*Chernesky, Heyman & Kress, Melanie R. Mackin* and *Karen R. Adams*, for appellant.

*E.S. Gallon & Associates* and *Richard M. Malone*, for appellee Jones.

*Betty D. Montgomery*, Attorney General, and *Charles Zamora*, Assistant Attorney General, for appellee Industrial Commission.

_____

*Per Curiam.*

{¶ 10} Multiple sclerosis is a progressively debilitating disease that is characterized by periods of symptom activity and remission. Cecil, Textbook of Medicine (15 Ed. 1979) 846; Merck Manual of Diagnosis and Therapy (14 Ed. 1982) 1354. Since claimant's MS pre-existed his industrial injury, Mead views the conditions as having two components -- an underlying element for which Mead is not responsible and that portion of the condition that the industrial accident aggravated. Mead asserts that the latter must be confined to the symptomatic phase immediately following the industrial injury. Once those symptoms subsided, Mead contends, any future occurrences must be deemed attributable to the underlying condition and consequently are not Mead's obligation.

{¶ 11} Mead urges us to revisit our holding in *Schell v. Globe Trucking, Inc.* (1990), 48 Ohio St.3d 1, 548 N.E.2d 920. There, we stated:

"Because a disability must result from a work-related injury to be compensable, R.C. 4123.54, we entertain some doubt as to whether a compensable disability necessarily includes not only the component of disability attributable to the aggravation, but also the component of disability corresponding to the pre-

existing condition. However, that question is not before us in this appeal, and must await resolution another day.

"But even if it is assumed that the statute provides compensation for both components of disability, and it is further assumed that, as the[Ohio Manufacturers Association] argues, that result is unfair to the employer, then the appropriate remedy would be the amendment of the statute by the General Assembly. An injured worker, entitled to <u>some</u> compensation as a result of a work-related aggravation of a pre-existing condition, should not, by judicial fiat, be deprived of <u>any</u> compensation for that aggravation simply because the General Assembly, in our view, may have been overly generous in determining the amount of compensation." (Emphasis *sic*.) *Id*. at 4, 548 N.E.2d at 922.

{¶ 12} In this instance, Mead's own actions dissuade us from reopening this issue. Mead asserts that any symptomatic activity that arose after the first post-injury remission period was not causally related to the industrial injury. Mead, however, overlooks the fact that it accepted as valid a C-85-A form submitted for the purpose of reactivating the claim after a period of remission. In so doing, Mead effectively accepted the recurrence as being causally related to the industrial injury. Mead's assertion is, therefore, inconsistent with its own actions, and undermines the persuasiveness of its position.

{¶ 13} We find that the commission did not abuse its discretion in awarding permanent total disability compensation, and accordingly affirm the court of appeals.

*Judgment affirmed.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and STRATTON, JJ., concur.

————————————